## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

QUINTESSA LLC d/b/a QUINTESSA
MARKETING,

                  Plaintiff,

v.

ERB LEGAL INVESTMENTS, LLC, d/b/a
THE BRADLEY LAW FIRM,

                  Defendant.

Case No. CIV-20-876-R

## DEFENDANT'S MOTION TO DISMISS with BRIEF IN SUPPORT

Respectfully submitted,

 /s/  Patrick H. Lane
David Morse, OBA #6449
Patrick H. Lane, OBA #30885
Jordan M. LePage, OBA #32446
BALL | MORSE | LOWE
531 Couch Dr., Suite 201
Oklahoma City, Oklahoma 73102
Telephone:  (405) 701-5355
Facsimile:  (405) 701-2830
Email:  dmorse@ballmorselowe.com
Email:  plane@ballmorselowe.com
Email:  jlepage@ballmorselowe.com
*Attorneys for Defendant,*
*ERB Legal Investments, LLC, d/b/a*
*The Bradley Law Firm*

# TABLE OF CONTENTS

**INTRODUCTION** ...........................................................................................1

**STATEMENT OF FACTS**.............................................................................2

**PROPOSITION I: DISMISSAL FOR LACK OF JURISDICTION IS PROPER** .....6

    *A.* This Court Does not have Specific Jurisdiction over ERB; The Due Process Clause Prohibits the Exercise of Jurisdiction over ERB....................................7

        *1. ERB does not meet the "Minimum Contacts" test required under the Due Process Clause to establish jurisdiction within Oklahoma* ..........................9

        *2. Quintessa's Allegations Further Evidence a Lack of Minimum Contacts* ..10

        *3. Traditional Notions of Fair Play and Substantial Justice* ..........................11

            *i. The burden on the defendant* ............................................................11

            *ii. The forum state's interest in resolving the dispute*..........................12

            *iii. The plaintiff's interest in receiving convenient and effective relief* .13

            *iv. The interstate judicial system's interest in obtaining the most efficient resolution of controversies* ..................................................14

            *v. The shared interest of the several states in furthering fundamental social policies* ..................................................................................14

    *B.* This Court Does Not Have General Jurisdiction Over ERB............................15

    *C.* Conclusion ..................................................................................................15

**PROPOSITION II: APPLICATION OF THE *FORUM NON CONVENIENS* DOCTRINE WARRANTS DISMISSAL** ..................16

    *A.* The Threshold Requirements Are Met ...........................................................17

    *B.* Access to Sources of Proof ...........................................................................17

    *C.* Availability of Compulsory Process for Compelling Attendance of Witnesses18

*D.* The Order in Which the Courts Obtained Jurisdiction ......................................18

*E.* The Vexatious or Reactive Nature of Either the Federal or the State Action ...18

*F.* Whether Federal Law Provides the Rule of Decision.......................................18

*G.* The Adequacy of the State Court Action to Protect the Federal Plaintiff's Rights .................................................................................................................19

*H.* The Burden of Jury Duty on Members of a Community with No Connection to the Litigation .....................................................................................................19

*I.* The Local Interest in having Localized Controversies Decided at Home ........19

*J.* The Appropriateness of Having Diversity Cases Tried in a Forum that is Familiar with the Governing Law ....................................................................20

*K.* Conclusion ......................................................................................................20

**CONCLUSION** ............................................................................................................20

**CERTIFICATE OF SERVICE** ...................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Cases Cited**:

*Quill Ink Books Ltd. v. ABCD Graphics and Design, Inc.*, 361 F. Supp. 3d 1153, 2019 WL 613333 (W.D. Okla. Feb. 13, 2019) ........................................................ 1

*Far West Capital, Inc. v. Towne,* 46 F.3d 1071 (10th Cir. 1995) ............................ 7

*Satterfield v. Government Employees Insurance Company,* 287 F.Supp.3d 1285 (W.D. Okla. 2018) ................................................................................... 7, 15

*Pro Axess, Inc. v. Orlux Distribution, Inc.,* 428 F.3d 1270 (10th Cir. 2005) 8, 12, 14

*Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408 (1984) .............. 8

*Walden v. Fiore,* 571 U.S. 277 (2014) ................................................................... 8

*Racher v. Lusk,* 674 F. App'x 787 (10th Cir. 2016) .................................... 8, 11, 11

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) ........................................................................................................... 9

*Dental Dynamics, LLC v. Jolly Dental Grp., LLC,* 946 F.3d 1223 (10th Cir. 2020) 9

*Hydrokinetics, Inc. v. Alaska Mech., Inc.,* 700 F.2d 1026 (5th Cir. 1983) ............... 9

*Cagle v. James St. Grp.,* 400 F. App'x 348 (10th Cir. 2010) ................................ 12

*Sims v. United Bridge & Iron,* 1965 OK 91, 402 P.2d 911 ................................... 12

*Bernal v. Charty Cty. Mut. Ins. Co.,* 2009 OK 28, 209 P.3d 309 .......................... 13

*Brickner v. Gooden,* 1974 OK 91, 525 P.2d 632 ................................................. 13

*Daimler AG v. Bauman,* 571 U.S. 117 (2014) ...................................................... 15

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.,* 549 U.S. 422, 127 S. Ct. 1184 (2007) ......................................................................................................... 16

*Archangel Diamond Corp. Liquidating Tr. v. OAO Lukoil,* 812 F.3d 799 (10th Cir. 2016) .............................................................................................. 16

*Yavuz v. 61 MM, Ltd.,* 576 F.3d 1166 (10th Cir. 2009) ........................................ 17

**Federal Rules**:

*Fed. R. Civ. P.* 45(A)(1)(c)(1)(A)...........................................................................18

**State Statutes**:

*12 O.S. § 2004(F)* .......................................................................................7

**COMES NOW** Plaintiff, ERB LEGAL INVESTMENTS LLC d/b/a The Bradley Law Firm ("ERB"), by and through its attorneys of record, and pursuant to Fed. R. Civ. P. 12(b)(2), the Defendant, ERB Legal Investments, LLC d/b/a The Bradley Law Firm ("ERB"), moves this court for an Order dismissing the claims asserted by Plaintiff on the grounds that (1) this Court lacks personal jurisdiction over ERB in this matter, and (2) because this case should be litigated in Missouri this Court should dismiss the instant action under *forum non conveniens* doctrine. In support of the present Motion, ERB presents to the court as follows:

## INTRODUCTION

"Where the Court's jurisdiction over a defendant is contested, the plaintiff bears the burden of proving that jurisdiction exists." *Quill Ink Books Ltd. v. ABCD Graphics and Design, Inc.*, 361 F. Supp. 3d. 1153, 2019 WL 613333 at *1 (W.D. Okla. Feb. 13, 2019). Plaintiff's "petition" filed in the District Court of Oklahoma County does not assert a single factual allegation to demonstrate any basis for jurisdiction over ERB, aside from summarily asserting that "The Oklahoma County District Court has subject matter jurisdiction over the transactions and occurrences stated herein and personal jurisdiction over the parties hereto" and that "Venue is proper in Oklahoma County District Court pursuant to 12 O.S. §187." *See* Exhibit 1, Plaintiff's Petition, ¶¶3 - 4. As detailed herein, this Court has neither specific nor general personal jurisdiction over ERB. Moreover, the doctrine of *forum non conveniens* dictates that this fight should be heard in Missouri – not Oklahoma. As such, Plaintiff's claims against ERB should be dismissed.

## STATEMENT OF FACTS

1.    Plaintiff Quintessa LLC doing business as Quintessa Marketing ("Quintessa") is a limited liability company headquartered in Oklahoma City, Oklahoma County, Oklahoma that provides marketing services to law firms. *See* Ex. 1, Plaintiff's Petition, ¶1; *see also* Exhibit 2, Quintessa Contract.

2.    Quintessa solicits business from law firms in foreign states, including Missouri. Once Quintessa secures a law firm client, Quintessa's business model is such that it purchases advertisements in foreign states, including Missouri, for the "territory" its client wishes to target. *See* Exhibit 3, Affidavit of E. Ryan Bradley, ¶¶ 11, 13; *see also* Ex. 2, Quintessa Contract.

3.    ERB is a limited liability company registered in the State of Missouri and headquartered in St. Louis, Missouri. *See* Ex. 1, Plaintiff's Petition, ¶2; *see also* Ex. 3, Affidavit of E. Ryan Bradley, ¶2.

4.    ERB's lawyers are licensed to practice law in Missouri and Illinois state courts only. *See* Ex. 3, Affidavit of E. Ryan Bradley, ¶3.

5.    ERB represents personal injury victims, mostly from motor vehicle accidents, that occur within Missouri and Illinois. *See* Ex. 3, Affidavit of E. Ryan Bradley, ¶4.

6.    The sole member of ERB is a resident of Florida. *See* Ex. 3, Affidavit of E. Ryan Bradley, ¶5.

7.    The only other lawyer employed by ERB is Patrick Hinrichs and he is a resident of Missouri. *See* Ex. 3, Affidavit of E. Ryan Bradley, ¶6.

8. All employees of ERB live within approximately thirty (30) miles of ERB's office located in St. Louis, Missouri. *See* Ex. 3, Affidavit of E. Ryan Bradley, ¶ 7.

9. Neither of ERB's lawyers are licensed to practice law in Oklahoma. See, Ex. 3, Affidavit of E. Ryan Bradley, ¶8.

10. ERB has never accepted any personal injury case from Oklahoma. *See* Ex. 3, Affidavit of E. Ryan Bradley, ¶8.

11. ERB does not do business in Oklahoma. ERB has no office in Oklahoma. ERB has no employees in Oklahoma. ERB does not and has never solicited or advertised to any potential clients within Oklahoma. *See* Ex. 3, Affidavit of E. Ryan Bradley, ¶9.

12. In early April 2020, prior to entering into the subject contract, Quintessa solicited ERB's business by telephone call through a third party in California to ERB's sole member's Missouri phone number, 314-***-****. *See* Ex. 3, Affidavit of E. Ryan Bradley, ¶10.

13. In Quintessa's sales pitch to ERB, it offered to provide marketing services in Missouri to Missouri car crash victims. *See* Ex. 3, Affidavit of E. Ryan Bradley, ¶11.

14. On April 21, 2020, the subject contract was executed by ERB's sole member, E. Ryan Bradley, within the state of Missouri and emailed to Lauren Mingee. *See* Ex. 2, Quintessa Contract; *see also* Ex. 3, Affidavit of E. Ryan Bradley, ¶12.

15. Per the express terms of the contract "Beginning on the effective date, 04/20/2020, QUINTESSA MARKETING will begin to deliver Personal Injury leads in Missouri to The Bradley Law Firm." *See* Ex. 2, Quintessa Contract.

16.     Per the express terms of the contract "Tier 1" cases were "Motor Vehicle Accident" at "$2,000 per Plaintiff" *in the territory of* "*Missouri*." *See* Ex. 2, Quintessa Contract (emphasis added).

17.     Per the express terms of the contract "Tier 2" cases were "Commercial Policy / Motor Vehicle Accident Injury" at "$4,200 per Plaintiff" *in the territory of* "*Missouri*." *See* Ex. 2, Quintessa Contract (emphasis added).

18.     One hundred percent (100%) of all marketing that Quintessa performed for ERB was through display advertising *within the states of Missouri or Illinois*. *See* Ex. 3, Affidavit of E. Ryan Bradley, ¶13 (emphasis added).

19.     At no time did Quintessa perform marketing services on behalf of ERB within the "territory" of Oklahoma. *See* Ex. 3, Affidavit of E. Ryan Bradley, ¶14.

20.     At no time did ERB request Quintessa perform marketing services for ERB outside the states of Missouri or Illinois. *See* Ex. 3, Affidavit of E. Ryan Bradley, ¶15.

21.     The subject contract required Quintessa to "[adhere] to required disclaimers including Missouri's on all owned digital properties used to generate leads […]." *See* Ex. 2, Quintessa Contract.

22.     There is no long-term commitment by ERB to Quintessa within the contract. *See* Ex. 2, Quintessa Contract.

23.     ERB paid the initial payment, and all subsequent payments, to Quintessa via credit card. *See* Ex. 3, Affidavit of E. Ryan Bradley, ¶16.

24.     At no time did ERB ever send any US mail, FedEx, DHL, UPS or any other letter carrier to Quintessa in Oklahoma. *See* Ex. 3, Affidavit of E. Ryan Bradley, ¶17.

25.     On July 17, 2020,  less than 3 months after executing the contract, ERB declared Quintessa in material breach.  *See* Ex. 3, Affidavit of E. Ryan Bradley, ¶18.

26.     Quintessa was given seven (7) days to cure its breach of the contract. *See* Ex. 3, Affidavit of E. Ryan Bradley, ¶19.

27.     Quintessa was informed that if it failed to cure its breach of the contract within seven (7) days, ERB would file suit in the state of Missouri. *See* Ex. 3, Affidavit of E. Ryan Bradley, ¶20.

28.     On July 23, 2020, ERB filed a breach of contract and fraud lawsuit against Quintessa within the Circuit Court of St. Louis City, State of Missouri at case styled Cause No. 2022-CC09383. *See* Ex. 3, Affidavit of E. Ryan Bradley, ¶21; *see also* Exhibit 4, ERB Petition.

29.     ERB filed an Amended Petition in that the Missouri case on August 3, 2020. *See* Ex. 3, Affidavit of E. Ryan Bradley, ¶22; *see also* Exhibit 5, ERB Amended Petition.

30.     On July 23, 2020, counsel for Quintessa, Ben McCaslin, filed its lawsuit in the District Court of Oklahoma County, State of Oklahoma, at case styled CJ-2020-3405. *See* Ex. 1, Plaintiff's Petition.

31.     The allegations against ERB in the lawsuit filed by Quintessa is that it breached the contract because it failed to pay for leads (Count I) and it committed fraud by "continu[ing] to pursue multiple leads it had 'disengaged'…" which Quintessa states was done by "continued [representation of] the clients associated with such leads and even settled claims for some of these clients" and "falsely represented to Plaintiff that these leads

had been 'disengaged' with the intent that Plaintiff rely on such representation and no charge Defendant for the leads." *See* Ex. 1, Plaintiff's Petition ¶¶13, 18 - 19.

32.     The attorney-client contract ERB provided Quintessa for the potential clients of ERB was executed only by Missouri or Illinois car accident victims. *See* Ex. 3, Affidavit of E. Ryan Bradley, ¶23.

33.     All ERB clients signed by Quintessa resided or reside in either Missouri or Illinois. *See* Ex. 3, Affidavit of E. Ryan Bradley, ¶24.

34.     The retainer agreement Quintessa utilized on behalf of ERB to retain each client has a Missouri choice of law provision. *See* Ex. 3, Affidavit of E. Ryan Bradley, ¶25; *see also* Exhibit 6, Retainer Agreement (privileged information redacted; choice of law provision highlighted).

**BRIEF IN SUPPORT**

## I. DISMISSAL FOR LACK OF JURISDICTION IS PROPER

This Court lacks both specific and general personal jurisdiction over ERB and any exercise of jurisdiction by the Western District of Oklahoma over ERB does not comport with the Due Process Clause of the Fourteenth Amendment.

The plaintiff in a diversity action must show that personal jurisdiction over a nonresident defendant is proper in one of two ways: (1) if statutorily authorized; or (2) its exercise of jurisdiction would not offend the due process clause of the Fourteenth Amendment of the United States Constitution. *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995). The applicable Oklahoma statute provides that an Oklahoma court "may exercise jurisdiction on any basis consistent with the Constitution[s] of [Oklahoma] and . . . the United States." 12 O.S. §2004(F). Thus, the two-part analysis of jurisdiction "has collapsed into a single due process analysis" in Oklahoma. *Satterfield v. Government Employees Insurance Company*, 287 F.Supp.3d 1285, 1291-292 (W.D. Okla. 2018).

A court's due process analysis should be based on "the quality and nature of a nonresident defendant's alleged contacts, ties, or relations to the forum." *Satterfield*, 287 F.Supp.3d at 1292 (internal citations omitted). Within this analysis, two types of personal jurisdiction are examined: specific and general.

## A. THIS COURT DOES NOT HAVE SPECIFIC JURISDICTION OVER ERB; THE DUE PROCESS CLAUSE PROHIBITS THE EXERCISE OF JURISDICTION OVER ERB.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1276–77 (10th Cir. 2005) citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quotations omitted). Only where a nonresident defendant has minimum contacts with the forum state is a court's exercise of personal jurisdiction proper. *Id.* A court has specific jurisdiction over a defendant when the focus of the cause of action arises from, or is directly related to, the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984). Specific jurisdiction does not focus on the defendant's contact with the Plaintiff, but rather, the defendant's relationship with the forum and the litigation. *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014).

A specific personal jurisdiction analysis proceeds in two steps. *Pro Axess, Inc.*, *supra.* This first questions focuses on whether a nonresident defendant has activities in and connection with the forum state such that they "should reasonably anticipate being hauled into court there." *Id.* An affirmative answer to this question does not necessarily end the inquiry. Rather, a court must "determine whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *Racher v. Lusk*, 674 F. App'x 787, 792 (10th Cir. 2016) (quoting *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056-57 (10th Cir. 2008).

### 1.    ERB does not meet the "Minimum Contacts" test required under the Due Process Clause to establish jurisdiction within Oklahoma.

As set forth above, the minimum contacts analysis is focused on the nonresident's activities with the forum state and its residents. As the United States Supreme Court has said, "If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that **it cannot**." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S. Ct. 2174, 2185, 85 L. Ed. 2d 528 (1985) (emphasis added). There must be actions **by the Defendant himself** that create a "substantial connection" with the forum state. *Id.* at 475 (emphasis added). Moreover, there is no purposeful direction even where a contract with a forum-state entity was accompanied by the parties' contemplation of "some potentially ongoing consequences" when the record lacked evidence of "any significant course of dealing" or long-term contractual commitments associated with the forum state. *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1230 (10th Cir. 2020) citing *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). In an analogous case from the Fifth Circuit, a nonresident defendant was held not to have established minimum contacts where the Texas plaintiff was performing its manufacturing obligations under a contract in Texas and the nonresident was mailing payments therefor to Texas. *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983).

Here, Quintessa traveled outside of Oklahoma into Missouri to solicit and pursue ERB's business. ERB never sought to do any business in Oklahoma and never has. Indeed,

all marketing efforts by Quintessa on ERB's behalf were directed at Missouri or Illinois car accident victims. All clients procured by Quintessa are Missouri or Illinois residents. The fact ERB accepted Quintessa's business proposition and entered into a contract with it does not establish purposeful availment to Oklahoma. There was no long-term commitment between the parties. Moreover, even assuming arguendo that Quintessa was performing its Missouri and Illinois focused marketing from Oklahoma, ERB, unlike Alaska Mechanical in the Fifth Circuit, never mailed anything to Quintessa. As such, Plaintiff's contacts are even less.

### 2. *Quintessa's Allegations Further Evidence a Lack of Minimum Contacts.*

The allegations against ERB in the lawsuit filed by Quintessa are that it breached the contract because it failed to pay for leads (Count I) and it committed fraud (Count II) by "continu[ing] to pursue multiple leads it had 'disengaged'…" which Quintessa states was done by "continued represent[ation of] the clients associated with such leads and even settled claims for some of these clients" and "falsely represented to Plaintiff that these leads had been 'disengaged' with the intent that Plaintiff rely on such representation and no charge Defendant for the leads." As such, Count I for breach of contract alleges ERB failed to pay Quintessa according to the terms of the contract. Count II however alleges that ERB inappropriately conducted legal work on and for Missouri / Illinois clients, within Missouri / Illinois, and even settled some cases, subject to the terms and conditions of the Missouri retainer contract between ERB and its clients. As such, the complained of actions allegedly took place in Missouri and/or Illinois, by and between ERB and its Clients,

pursuant to the terms and conditions of the Missouri retainer agreement. On this basis alone, the fraud claims do not "arise out of" the contract.

### 3. Traditional Notions of Fair Play and Substantial Justice

*Assuming arguendo* ERB has minimum contacts sufficient to support jurisdiction in this Court, which it does not, this case should nevertheless be dismissed. Contacts are just the first prong in personal jurisdiction analysis. If that prong is satisfied, a trial court must then "determine whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice." *Racher, supra*. The factors for consideration in this second prong are: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies. *Id.* (citing *Trujillo v. Williams*, 465 F.3d 1210, 1221 (10th Cir. 2006)). As evidenced herein, ERB does not have the requisite minimum contacts for this Court to exercise jurisdiction. However, should the Court find otherwise, fair play and substantial justice require dismissal because this cause should be heard in Missouri.

### i. The burden on the defendant.

To require ERB's owner (a Florida resident), ERB's employees (all Missouri and Illinois residents living within 30 miles of ERB's St. Louis, Missouri office) and clients procured by Quintessa (all Missouri and Illinois residents) to travel to Oklahoma to attend trial would be unduly burdensome for ERB. Quintessa's allegations against ERB are strenuously denied and ERB intends to defend itself from these patently false allegations

by calling every single client as a witness. Requiring ERB to arrange transportation to Oklahoma for an untold number of its Missouri / Illinois clients is the epitome of unduly burdensome.

## ii. The forum state's interest in resolving the dispute.

Oklahoma should have little interest in protecting an Oklahoma limited liability company which solicits business from law firms outside of Oklahoma. Quintessa avails itself to these foreign states by soliciting business therefrom and benefiting financially. Oklahoma has zero interest in regulating a Missouri law firm that has no lawyers licensed here, has never represented a personal injury client in Oklahoma, has never traveled to Oklahoma for work, has never appeared in an Oklahoma court, has no office or presence in Oklahoma, etc. All ERB did was answer a phone call from Quintessa's owner, agree that it could perform marketing within Missouri / Illinois only, and pay it money.

A state's interest is also implicated where resolution of the dispute requires a general application of the forum state's laws." *Pro Axess, Inc.,* 428 F.3d at 1280. The subject contract has no choice of law provision. Oklahoma law provides that, absent an agreement between the parties or a provision stating a place of performance, contracts are governed by the law where the contract was made. *Cagle v. James St. Grp.*, 400 F. App'x 348, 355 (10th Cir. 2010) (citing *Harvell v. Goodyear Tire & Rubber Co.,* 2006 OK 24, 164 P.3d 1028, 1033-34 (Okla. 2006)). In Oklahoma, a contract is considered made in the place where the final assent is given. *Sims v. United Bridge & Iron*, 1965 OK 91, ¶ 13, 402 P.2d 911, 913. Here, Quintessa never signed the contract. Consequently, ERB's execution of the contract and payment of the initial deposit were the final assent given. Furthermore, the

contract clearly requires Quintessa to comply with Missouri legal disclaimers. *See* Exhibit 1.1. Thus, Missouri law governs this contract.

As for Quintessa's alleged fraud claim, Oklahoma has adopted the most significant relationship test. *Bernal v. Charter Cty. Mut. Ins. Co.*, 2009 OK 28, ¶ 12, 209 P.3d 309, 315. Courts must consider "(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties occurred." *Brickner v. Gooden*, 1974 OK 91, ¶ 23, 525 P.2d 632, 637. Factor 1 and part of factor 3 arguably weigh in favor of Oklahoma. However, as noted previously, the purported injurious conduct (factor 2) occurred in Missouri. ERB and its employees (count 3) are located in Missouri. Finally, the relationship between Quintessa and ERB occurred by Quintessa calling the Missouri-based company and offering to perform marketing in Missouri directed at Missouri residents. Consequently, Missouri law governs Quintessa's alleged fraud claim.

Oklahoma's interest is not implicated by Quintessa' claims herein.

### iii. The plaintiff's interest in receiving convenient and effective relief.

Certainly, Quintessa has a legitimate interest in receiving convenient and effective relief. However, there is no reason why Quintessa cannot obtain effective relief from a Missouri court. Furthermore, Quintessa's convenience prevail at the cost of ERB's Due Process rights.

#### iv. The interstate judicial system's interest in obtaining the most efficient resolution of controversies.

This factor asks, "whether the forum state is the most efficient place to litigate the dispute." *Pro Axess, Inc.,* 428 F.3d at 1281. This inquiry includes the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation. *Id.* Here, the only witnesses from Oklahoma are Quintessa's owners and/or employees. ERB's owner is a Florida resident. ERB's employees are all Missouri residents. All of Quintessa's marketing occurred in Missouri or Illinois. Most importantly, the clients (what Quintessa refers to as "leads") are all either Missouri or Illinois residents. The notion that each of these individuals should be required to travel to Oklahoma to testify at trial is outlandish. Furthermore, a close examination of Quintessa's allegations reveals that Quintessa's alleged fraud arises from the "continued representation" of leads and "even settled claims for some of these clients." *See* Exhibit 1.1, ¶29. As such, the complained of actions allegedly took place in Missouri and/or Illinois.

As for what forum's substantive law governs the case, as set forth above that is Missouri. Finally, jurisdiction is not necessary to prevent piecemeal litigation. As is clear from the arguments herein, Quintessa is subject to the jurisdiction of Missouri courts by its conduct and has been sued there by ERB. The Missouri court can fully adjudicate all claims between the parties without this Court exercising jurisdiction.

#### v. The shared interest of the several states in furthering fundamental social policies.

ERB does not believe this is a relevant factor given the facts of this case.

## B.   THIS COURT DOES NOT HAVE GENERAL JURISDICTION OVER ERB.

A business association is considered "at home" in a state when a defendant's affiliations with that state "are so constant and pervasive as to render it essentially at home in the forum State." *Satterfield*, 287 F.Supp.3d at 1296-297 (internal citations omitted); *See also Daimler AG v. Bauman*, 571 U.S. 117 (2014). A court's general jurisdiction analysis focuses on the defendant's contacts with the state outside of those events giving rise to the suit, such as where the business is incorporated and where it has its principal place of business.

As previously stated, ERB is organized in Missouri and has its principal place of business in Missouri. SOF ¶3. ERB operates exclusively in Missouri and Illinois and has never operated in, or directed activities to, Oklahoma. SOF ¶¶ 3-5, 8. Additionally, not only did the business transaction between Quintessa and ERB never touch Oklahoma, but ERB has never conducted any type of business in or directed any of its business activities to Oklahoma. Ultimately, Oklahoma has no basis in which to claim general jurisdiction over ERB.

## C.   CONCLUSION

It is beyond dispute that Oklahoma does not have general personal jurisdiction over ERB. Furthermore, ERB has not established minimum contacts with the State of Oklahoma. In fact, it has no contacts with the State of Oklahoma outside of the contract at issue formed by Quintessa going to Missouri to solicit ERB's business. However, should this Court determine that limited connection gives rise to the minimum contacts necessary for the exercise of specific personal jurisdiction, such exercise will nevertheless offend

traditional notions of fair play and substantial justice for the reasons set forth above. Consequently, the Court should dismiss this action.

## II. APPLICATION OF THE *FORUM NON CONVENIENS* DOCTRINE WARRANTS DISMISSAL.

As previously noted, this dispute is focused in the State of Missouri. As such, it should be litigated therein. The doctrine of *forum non convenience* provides district courts with the authority to dismiss actions if a more appropriate forum exists to hear the case. *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425, 127 S. Ct. 1184, 1188 (2007). A *forum non conveniens* analysis begins with two threshold questions: (1) does another forum exist wherein the defendant is amenable to process? and (2) is foreign law applicable? *Archangel Diamond Corp. Liquidating Tr. v. OAO Lukoil*, 812 F.3d 799, 804 (10th Cir. 2016) (citations omitted). Once these threshold questions are answered affirmatively, the court must balance both private and public interests. *Id.* These interests are as follows:

The private interest factors include:

1. the relative ease of access to sources of proof;

2. availability of compulsory process for compelling attendance of witnesses;

3. cost of obtaining attendance of willing non-party witnesses;

4. possibility of a view of the premises, if appropriate; and

5. all other practical problems that make trial of the case easy, expeditious and inexpensive.

Public interest factors that are part of the balancing include:

1. administrative difficulties of courts with congested dockets which can

16

be caused by cases not being filed at their place of origin;

2. the burden of jury duty on members of a community with no connection to the litigation;

3. the local interest in having localized controversies decided at home; and

4. the appropriateness of having diversity cases tried in a forum that is familiar with the governing law.

*Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1172 & 1180 (10th Cir. 2009). As has been established herein, and is described further below, this facts of this case call for dismissal because of the inconvenient forum which Oklahoma presents.

### A. THE THRESHOLD REQUIREMENTS ARE MET

Because ERB is a Missouri entity with its principal place of business therein, it is unquestionably amenable to service of process in that state. In fact, because ERB has filed suit against Quintessa, the question of service is moot and Missouri is the proper forum for the parties' dispute. Furthermore, as explained in detail in Section I(A)(3)(ii) above, this dispute is governed by Missouri law. Consequently, ERB has met the threshold requirements for a dismissal under *forum non conveniens*.

### B. ACCESS TO SOURCES OF PROOF

This factor clearly weighs in favor of a Missouri forum. As explained above, with the exception of Quintessa, all of the witnesses necessary to adjudicate this matter are located in or near St. Louis Missouri. Moreover, the advertising done by Quintessa was done in Missouri.

### C. AVAILABILITY OF COMPULSORY PROCESS FOR COMPELLING ATTENDANCE OF WITNESSES

St. Louis, Missouri, where the majority of witnesses are in close proximity, is approximately five hundred (500) miles from the Western District's courthouse doors. As this Court is no doubt aware, for trial purposes a witness may only be compelled to attend within one hundred (100) miles from where the witness resides, is employed , or regularly transacts business. Fed. R. Civ. P. 45(A)(1)(c)(1)(A). Consequently, for the majority of witnesses necessary to try this case, there is no way to compel their attendance at trial if this case remains in this Court, whereas such attendance could be compelled in Missouri.

### D. COST OF OBTAINING ATTENDANCE OF WILLING NON-PARTY WITNESSES

This factor similarly weighs in favor of dismissal. Even if all the witnesses described in the preceding section were agreeable to coming to Oklahoma City, the cost of transporting and housing them would be substantial.

### E. POSSIBILITY OF A VIEW OF THE PREMISES, IF APPROPRIATE

ERB does not believe this is a relevant factor given the facts of this case.

### F. ALL OTHER PRACTICAL PROBLEMS THAT MAKE TRIAL OF THE CASE EASY, EXPEDITIOUS AND INEXPENSIVE

Where a case like this revolves around witnesses, this factor – like the others above – weighs in favor of dismissing this case. Furthermore, there is no legitimate argument Quintessa could make that trial in Missouri will be any less easy or expeditious than in this Court. Moreover, it is certainly not a given that a Missouri trial will be more expensive than trial in this federal court.

### G. ADMINISTRATIVE DIFFICULTIES OF COURTS WITH CONGESTED DOCKETS WHICH CAN BE CAUSED BY CASES NOT BEING FILED AT THEIR PLACE OF ORIGIN

As evidenced by the private interest factors, there is likely going to be a significant administrative burden in keeping a case where most witnesses and evidence are out of state in this Court. That burden is only amplified by the Court's existing docket coupled with the COVID-19 pandemic's effect on the courts of this state. This case is clearly based in St. Louis and should be tried there.

### H. THE BURDEN OF JURY DUTY ON MEMBERS OF A COMMUNITY WITH NO CONNECTION TO THE LITIGATION

Admittedly, Quintessa is a business located in Oklahoma City, which is in the Western District. So, there is at least a minimal connection to the litigation. But it is worth noting that the Western District covers the entire western half of this state. Consequently, a large percentage of possible jurors will have zero connection to this litigation. Conversely, the state court action filed by ERB is filed in St. Louis where ERB is located. Therefore, the jury pool there will have a much stronger connection.

### I. THE LOCAL INTEREST IN HAVING LOCALIZED CONTROVERSIES DECIDED AT HOME

Like the previous factor, this factor weighs in favor of dismissing this case in favor of the Missouri case to be tried in St. Louis. This dispute is not a localized controversy. It is a St. Louis controversy and should be litigated there.

J.	**THE APPROPRIATENESS OF HAVING DIVERSITY CASES TRIED IN A FORUM THAT IS FAMILIAR WITH THE GOVERNING LAW**

Again, the law governing this dispute is Missouri law. Consequently, this Oklahoma court is an inappropriate forum to oversee the litigation. Rather, a Missouri court should determine Missouri's law applicable to the facts of this matter.

K.	**CONCLUSION**

Not only are the threshold requirements of the forum non conveniens met, but the public and private interest factors overwhelmingly support dismissal of the case herein in favor of the instant dispute being tried in Missouri.

## CONCLUSION

The litigation at bar should not have been filed within the district court of Oklahoma County because it lacked personal jurisdiction over ERB. This Court likewise lacks personal jurisdiction. It would be grossly unjust to force ERB to appear in this Court when the Western District of Oklahoma has no personal jurisdiction over it. Moreover, the doctrine of forum non conveniens compels this Court to dismiss this action so that it may be tried in Missouri. For these reasons, the Court should dismiss Quintessa's lawsuit in its entirety.

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of September, 2020, a true and correct copy of the above and foregoing instrument was electronically served using the CM/ECF System to all counsel of record and sent by first class mail, postage prepaid, to:

Benjamin M. McCaslin
Stride Law, PLLC
7919 Mid America Blvd., Ste. 230
Oklahoma City, OK 73135
Telephone: (405)513-4725
Facsimile: (405)562-5646
*Attorney for Plaintiff*

    /s/ Patrick H. Lane